Good morning. Please be seated, ladies and gentlemen. We have six cases on the calendar this morning. Two from the PTAB, one from the TTAB, one from the District Court, one from the Court of Appeals for the Veterans' Claims, and one from EMSPB. The first case is Quectel Wireless Solutions versus, and I'm not up on my Dutch, but I would guess it might be something like Koninklijke Philips. You know it's Philips. 2023-1155. Mr. Courtney. Thank you, Judge Lurie. Robert Courtney from Fish and Richardson representing Quectel. This first appeal, the 1155 appeal, is an IPR claim construction appeal. We're dealing with claims here relating to signaling for cell networks. So we have handsets and towers communicating with each other. The specific subject matter is the negotiation of initial control information for a communication that the handset and the tower are going to be making. And that word initial is at the center of the case. The board held that these claims are limited to the setup of new communications. We argued, and we think the record unambiguously shows, that these claims also cover restoration of interrupted communications, and that's important because it is dispositive to the interpretation of that term initial in the claim. If the claims say certain data is initially transmitted from time to time, the board, we think, erroneously determined that initial meant that was the first time that there had been such a communication on those channels. Because the patent says these claims also relate to restoration of interrupted connections, the board's construction doesn't work. That word initially has to be read in the context of interrupted connections, and we think everything bears that out. We begin with the claim. I understand your proposed construction. And it is the first time particular control information is being transmitted. That's what the claim means by initially transmitted? Yes, Your Honor. Thank you. We believe that the claim has to be read. The initial event is the request for resources. There is no transmission of control information until after the acknowledgement is received, and then there's initial transmission of control information. So it has to be a particular type of control message, right? It has to meet the requirements of the claim, and then it has to be the first of the relevant communication strings. So we look at Figure 3 of the patent, and the patent is describing a series of events that begin with the request for resources and then move forward through the acknowledgement, the initial transmission of control information, and the initial transmission of data. It's initial in the sense that it's part of that. It's opening up that sequence of events. In the case of an interrupted transmission, is there also an acknowledgement that takes place? In the case of an interrupted transmission where there's restoration, there would first be a request, you know, I'm back. Right. Right, I came out of the tunnel or whatever it is. So there would be a request for resources, but it would be on a channel that had previously been used. So they're here to leave. There would still be an acknowledgement of that request. How do we know that? This is an aspect of the specification, I'm sorry, the underlying standards, and there was discussion of those standards. I mean, I'm just wondering where in the record did you argue that there would be this new acknowledgement, new request for resources, and then a new acknowledgement sent after there was an interruption? And then where did your expert say that, about there would be this new acknowledgement sent? So I want to – The uplink and download channels get established initially, right? And that's what the bird thought initial meant. That's when you get your initial transmission of control information. That's when you get your initial transmission of data. And then you delay that initial transmission of data sometime after the initial transmission of control information so that you allow the different stations' power levels to converge and synchronize, right? That's right. And so structurally, all of that fits with the claim, and it makes perfect sense. You have this other theory of the claim, which seems to rest on the idea that, well, maybe after an interruption on that established link, there can be a new request for resources after that interruption, and then a subsequent new acknowledgement. That's what I'm hearing you say today. I didn't see that said anywhere below, and so that's what I'm interested in seeing. So I have two thoughts in response to your question. I want to make sure I'm understanding the question correctly. First, this idea that the claims apply to interrupted communications is not a creation of QECTEL. That's in the specification, right? That's several points in the specification. That's if that aspect of the spec made it into the claim. That's a separate question. Fair enough, but this is not something we created. And then second, I would say we would contend when we interpret that term initially, we're setting our reference window. What do we mean initially as to what? The board thought it meant initially as to all time prior to the request. I'm having a hard time listening to you because I need to hear you show me around the record. Your side, your expert, discussed the idea of after an interruption, there is this new request for resources that needs to go out, and then there's a receipt of an acknowledgment in response to that request for resources after an interruption. Where in the record did your expert say that? I don't think we needed an expert to say this. I think it's in the specification at the bottom of Column 4. I think it's also in Column 1. Where in Column 4 does it say there will be, after an interruption, a new request for resources after an interruption? I saw there it was that the connection was maintained, bottom of Column 4, top of Column 5. That's right. So why would there be a request for new resources and then a subsequent acknowledgment in response to that request for resources? So what we read at the bottom of Column 4 and top of Column 5 is it's saying there was zero communication. There was an extant connection. The channel existed and it still exists in memory. But that has gone silent. And the patent is saying the alleged invention here is a way to improve restoration of those connections, and that's going to include a request for resources by the mobile station. Where does it say that? I think we find it in the claims. We find it in the bottom of Column 4 and 5 and in Claim 1. I am not aware. It doesn't say anything about a request for new resources and then a subsequent acknowledgment, does it? Other than saying that, you know, Figure 3 depicts the invention, right? And when it describes Figure 3, it's not referring specifically to new connections or interrupted connections. It's saying Figure 3 is the invention. Figure 3 certainly depicts the request for resources. So I guess getting back to Judge Reyna's point, this whole question of the new acknowledgment, Judge Reyna had to ask that question because your side never really developed this angle below or in your briefing to us that there would be a second acknowledgment. I, too, had that very same question. And now you're telling me, well, we don't have anybody saying that that's how it works after an interruption, but we didn't need to, and I'm concerned about that kind of an argument. So our argument, and I want to be clear and make sure that we're all on the same page, our argument is that these claims require showing a request, which is in lump, right? An acknowledgment, which is in lump. Those are not disputed. And then the required exchange of control information and data information on the timing of the claims required. The Board said that we had failed to carry our burden there because we had not shown that there was not control information prior to the request. That was the Board's analysis. Our contention is that's not what the claims require. The claims don't impose restrictions about what happened prior to the request. And we know that because that's the only way to interpret initially in the way the abstract does. The abstract says initially can include either restoration of interrupted communications or new communications. So I don't think we have to have that. That portion of the abstract, you didn't argue it to the Board. Is that right, in your claim construction argument below? Certainly we directed the Board to argue it. But the argument you're making to us now about the coded language from the abstract you're presenting to us now, that particular language you didn't actually push it in front of the Board and say, this supports our claim construction, right? I think there's a point. Is that right? Yes. That's familiar. Okay. So where then did you say, hey, look, there's an interesting statement here in the abstract. So please look at it that way in support of our construction for the word initial transmit. At the time, our colleagues representing Phillips filed their reply. Look, you said the answer is no. And I said, fine. Then show me where it is. Where is it in your joint appendix? Where can I see that the Board was on notice that you were relying on this particular passage from the abstract in support of your construction for the word initially transmitted? I hope I don't have to ask yet again this same question. Thank you, Your Honor. We do not direct the Board to the abstract on this point. Okay, then. The answer was yes. There's a procedural element which I think has to be included. So the answer was yes. That's correct. And I think it requires context. The answer was yes. I think it requires context, which is that my colleagues representing Phillips, at the time of their sole reply, took the view that the claims covered interrupted connections. So this was not a dispute going into the hearing. At the hearing, our colleagues representing Phillips took a new position and said these claims do not cover the restoration of interrupted connections. We were not on notice of that argument prior to the oral hearing. We presented at the oral hearing an argument fully consistent with what I'm describing today. Judge Chen, you are correct. That argument at the oral hearing did not include specific citation to the transcript. I'm sorry, to the appendix. Or the abstract. But it was wholly consistent with the argument that Quechtel has made from the beginning of this, which is that these claims cover both restoration of interrupted connections and new connections and that that term initially has to be read in that context. I am unaware of any case from this Court finding a party has forfeited its right to rely on part of the intrinsic record because it did not respond at an oral hearing with a citation that it could not have reasonably prepared based on its adversary's briefing going into that hearing. You did get an opportunity to clearly respond and participate in the claim construction, correct? Yes, Judge Reynolds, certainly. And we took the position throughout that. That's what we're talking about here, claim construction. Yes, but prior to the Board's decision, I don't think it's overstating it to say that the Board's decision turns on the idea, at least in highly relevant part, that these patents, no one uses the term initially transmitted to refer to communication happening after interruption, restoration of interruption. That's on Appendix 13, I believe. That statement is incorrect. It's the Board's statement that's incorrect. Had we been on notice that Phillips was going to pursue this idea prior to the oral hearing, certainly we would have prepared that. We heard this argument at the hearing. If we found the claim construction, is that on the phone? Yes, Your Honor. This patent expired, correct? Yes, that's correct. Okay. However, this patent is in litigation. Counsel, I'm initially transmitting to you the fact that you're into your battle time. Thank you, Your Honor. We'll serve it for you. Mr. Beck. Good morning, Your Honors. May it please the Court. George Beck for Appellee Phillips. I'll start by addressing the points that were just raised. First, in terms of requests and acknowledgment, as the Board found that the only discussion of requests and acknowledgement is in respect to the embodiment that does pertain to the claims, which is the Fig. 3 embodiment. And that is an improvement over what's shown in Fig. 2, which explicitly discusses start of a transmission, which follows a request and acknowledgment. So there's a request for resources, followed by an acknowledgment, and that establishes the channels that are at issue. There's no debate that that is an embodiment that the claims are directed to. Now, the issue about whether the claims apply to a situation where transmissions resumed on existing channels, that, in our view, is a manufactured dispute. The claims, it's saying that there has to be no exclusion of preferred embodiments, but there's a presupposition that the interruption is actually a preferred embodiment. What happens in a situation where you have an initial transmission, you have a request, and you have acknowledgment, and then you have the initial flow of data in the data channel, right? What happens if there's no acknowledgment, there's no transmission at all? There would be no establishment of those channels. So there has to be an acknowledgment of the request. Correct, Your Honor. The base station's request of the mobile station, wake up, we're about to make a transmission. Mobile station says, okay, I'm ready, and that acknowledgment begins the flow of the data content. It's not the data, the control. What the invention's directed to and what FIC-3 is talking about is a request from the mobile station. So I want to make a call, so I make a request. Base station checks to see if there's available resources, is there a capacity for that, and it sends an acknowledgment. That results in establishment of these dedicated control channels and an uplink channel, meaning transmission. If there's no acknowledgment, there's no transmission of the control data. Correct. In the column four to five. Let's talk about where there's an interruption. Is there a requirement there for an acknowledgment? No. Why would you need an acknowledgment if there's already an open line of information? You wouldn't, Your Honor, and there's no evidence of that. The interruption occurs when, say, you're talking on the phone and you go under an underpass, as the example we gave. There might be a loss of transmission on the control channels and the data channel. So that interrupts this power control. But there's no request there either. No. It says the logical connection is maintained. That means that the request of acknowledgment has already happened, so there's no need for a new request of acknowledgment. So that part of the specification is directed. And you're correct that the only time you would require to have this request acknowledgment and then the initial flow of the control data is when you establish the initial transmission? You're correct, Your Honor, and the board pointed to that. It referred to the description from figures two to three where there's reference to start of transmission. I think the specification and the fair read of it is it's generally addressing problems with multiple solutions to when there's a disruption of some sort, either at the start or an interruption, there's generally a problem with this lack of convergence. But the claims here are directed to the solution of fig three, which is the only embodiment that talks about initial transmission of control information. But what happens if the call drops altogether? Then you'd have to restart. At that point in time, do you have the sub-process study, the request of acknowledgment, the initial? Yes, that's correct, Your Honor. So if you get a call fail, you have to establish a new data channel and corresponding control channels. That's what fig three is addressing. And as the board found, there's no link to the claim language for the embodiment, the description that starts from column four to column five. In fact, that's directed to another solution that is another patent that we'll talk about shortly. With respect to the abstract, there was citation to the abstract by both parties in reference to the general problem. Problems associated with loss of power control. There was no citation to the abstract in support of a particular message construction, whatever that means. The first time we heard this construction offered by Coctel, that initial transmission of control information is referring to a particular message, was at the hearing. And I don't think it's fair to say that that was fairly predicated by anything in the SIR reply. Let's assume for the moment that we need to consider the entirety of the patent to construe this claim, including the abstract. So the abstract arguably opens the door to thinking about initial transmissions to include not only the real initial transmission, but also a transmission after a pause. So what do you have to say about that? Your Honor, there's a parenthetical reference to pause, but there's no reference to a request of acknowledgement, which is what I think is the key thing a person of ordinary skill in the art understands is the establishment of a channel. So I don't think the abstract supports this idea that the claimed invention relates to the interruption described in columns 4 to 5. I'm also not aware... The rest of the patent, say columns 1 through 4, it seems to pretty consistently talk about initial transmissions after you start up the communication and establish all these channels as a separate thought from transmissions after a pause or interruption, and then have a retransmission. So it seems like the first few columns of the patent make those two things separate thoughts. But the abstract here seems to be in a little bit of tension with that. So I guess we have to try to reconcile exactly what's going on. Well, I would just say, Your Honor, the abstract... I'm not aware of an authority saying you have to construe the claim to match the abstract. I think it's fair to say had this been raised to the Board and to Phillips, we could have addressed it below. We didn't have that opportunity, and I do think that specific argument at least has been forfeited. Well, to come down to the substance of it, Your Honor, I think that the abstract itself does not mention requests and acknowledgment, and that is the key distinction. So after all these channels are established, there's control information going back and forth, whether there's an interruption or no interruption. There's control information going on those channels. But the transmission of that control information, none of that could be considered a request for resources. Is that right? That's correct, Your Honor. The Board addressed that issue. We made a point in the response that the claim is specific about initial transmission on the uplink and downlink control channels. Quattel objected to our reference to any information, any time, and we made the point and the Board agreed in the survey reply that that's a particular channel, and that's the one established after the acknowledgment. There's a reference to additional signaling that may occur in UMTS embodiments, and the Board agreed that that's referring to transmission on other channels, not the channel that the claim is talking about. There's control channels used to establish, to carry the request and the acknowledgment, of course. But the dedicated channel, we're using the example of a call for that service, is the uplink and downlink control channels that are shown in Figures 2 and 3, and it's the uplink data channel that's really of concern with the patent. And there's no reference to establishment anywhere beyond what's described in the relevant embodiment. And to your point, Judge Chen, I think in the background and going forward, including the description of Fig 4, there's a distinction made between a start of a transmission or a retransmission over an existing channel. And again, existing channels mean channels that were established in response to the request and acknowledgment. Also, this is an expired patent. Is there litigation ongoing other than with Quetel? There's a litigation pending against Quetel and two other parties, Your Honor. One other point I wanted to make briefly is this is, in our view, kind of a so what. The board actually addressed this issue. It said, we don't agree that the claims cover a situation where there's an interruption on existing channels, where there's a suspension of data, suspension of control information for a time period. It said, but even if we do, you have a failure of proof. So they mapped these claims primarily to the LOMP reference. And they identified signaling that results in creation of a switch in speed. And they said, well, that signaling, that's the initial transmission of control information. When we asked our expert, you know, what specific channels are you talking about, he couldn't tell us. His LOMP described a whole bunch of channels, and he couldn't point to which one it was. We pointed it out to the board. I think there was an acknowledgment of that evidence to the board during the hearing. And so the board wrote up its opinion and said, well, we don't think the claim construction is right, but we'll address it anyway. And what they said as to this failure of proof was, you know, if we look at your mapping, we still don't know, regardless of whether there's an interruption or not, that what you're saying is the initial transmission of control information, Coctel, is actually the very first transmission on the uplink and downlink control channels, because we don't know even what control channels you're actually talking about. So I think what I understood from the briefing from Coctel is that all these problems would be solved, meaning they could try to address this failure of proof, if the court was to reverse the board and accept this particular message construction. But, you know, there's multiple problems with a particular message construction. You know, the board pointed out there's nothing in the express language of the claims that support it. There's nothing in the specification. There's no reference to even a message in the specification, much less to a particular message. You know, the invention itself is completely agnostic about the type of information. It's taking transmissions, you know, following a situation where there hasn't been any, or in the case of an interruption, there was a suspension. So there's no signal to measure. Everything in the patent is describing a situation where you're not able to converge your power loop. So, you know, what that means is for power control, it's necessary to get feedback from the base station. Mobile has to transmit. Base station says that signal is too weak or it's too strong, and it says a command telling you to just increase or decrease. Quartel gives the impression that that's a message saying set the power at a certain level, but that's not what a power control command is, which the patent itself refers to. It's just a simple go up or go down to try to converge. So if it's referring to the particular message construction, you know, that's completely divorced to what the whole problem and solution is in the patent. Again, the specific emphasis on Fig. 3 is there's nothing to measure because those channels don't exist. So what we're going to do is delay the data transmission, and this is specifically the solution that the patent says. We're going to delay it for a time period sufficient for conversions of the power. So what happens when you have a, like the example that we've been throwing around, you go into a bridge and your call stops, and then you come out the other end and you're reconnected, right? What's going on in the background while you're in the tunnel? Is there an attempt to, does the data continue to flow? Do you still have an open control channel, control data channel that's open? Obviously, there's still an attempt to communicate, right? There's two situations, your honor. I think you're referring to the situation where there's basically a temporary interruption, and that's what the patent refers to is that that can be either intentional or it can be unintentional. So that's an unintentional interruption, but the channels have been established. In other words, a reconnection after that temporary interruption, has there been a delay of the data channel at that time? First of all, I wouldn't call that a reconnection. It would just be a resumption of transmission on channels that already exist. Okay, so has there been a delay in the transmission of data? There's no description of a delay that follows resumption. There's no acknowledgement by the mobile station saying, I'm back, I'm open for communication? If the logical connection has been maintained, there's no need for that. It would be redundant. There's no point in that. There's already a request and acknowledgement. I'm just trying to understand if at that point in time, there's been a delay in the transmission of controlled data. There's a suspension. In this situation, there's a suspension of transmission on the control and data lines. That loses power control. And this different unclaimed solution, solution with other patents. The control information hasn't ceased. If it's unintentional, I imagine that you could have a situation where the phone is trying to send information, but there's interference and it's not getting through. So the base station can't take measurements at that point. So it might lose power control. But it doesn't try to solve that problem by having a delay. I'm just trying to figure out if at that point, there's been a delay in the transmission of the control information. Because it seems to me if that's the case, then it's going to kick off the same process again. You have a request and acknowledgement. Because if there's been an interruption in the control information, then there's no information guiding the power level or anything of that nature in the transmission. If the logical connection was lost, you get a drop call. Start over. That's a new start again. So you establish new channels with a request and acknowledgement. If the logical connection is maintained, which is what column four to five is talking about, you don't need to do that. Do you have a final closing thought? No, I think I've covered it. I think the Court got it right in its claim construction and addressed the specific issue that Coictel is raising here. Thank you. Thank you. Mr. Courtney, you have up to three minutes for a Bible theme meeting. Thank you, Your Honor. I'd like to address a few things that came up. The first is this notion that came out that I heard my colleague representing Phillips say, that the idea of claiming after an interruption, I'm sorry, covering restoration of communication after an interruption is unclaimed. That is not what they wrote to the Board in their SOAR reply. So when briefing closed before the Board on Appendix 423, Phillips wrote, they were describing the purpose of the delay, and they said the purpose of the delay is to facilitate convergence to avoid loss of data and or interference with other devices at the start of a transmission or after an interruption. So at the time briefing closed, we reasonably understood Phillips was not disputing that these claims covered embodiments that involved restoration after interruption. Another idea that came out during my colleague's presentation was the idea that there's kind of separate thoughts in this patent. One line of analysis about restoration of interrupted connections and one line of analysis about new connections. Respectfully, I don't think the figures or the written description or the claims bear that out. When we review the specification, we see an inventor saying, here's my technology. I've developed a technology. Its application, it is useful for either restoration of interrupted connections or new connections. It has two applications. It's a fairly brief description. There's not a lot beyond that. But we see nowhere that the inventor says, here's the path for new connections. Here's the path for interrupted connections. What we see is statements that the same technology is usable in both circumstances. And I do want to get to the Board's analysis of where it purported to say under Quetel's construction it would reach the same result. We believe these claims, fairly interpreted, impose no requirement at all about what happened prior to the request for resources. All they require is to show what's written. A request for resources, an acknowledgment, and the required initial transmission of control information and data. LOMP has those elements. I think the Board's theory, while you failed to show a restoration of an interrupted connection, we believe that's not a requirement of these claims. It's certainly not expressly written in any of the claims. We're describing here claims 11 through 17. And it's not present by implication. And, in fact, the abstract specifically contradicts it. And I would direct the panel, if I may, to that abstract while it's preparing its decision. Happy to answer any questions. Thank you, Counsel. Both Counsel, your case is submitted. We understand that the panel prefers that we switch tables.